Case No. 23-55739 Good morning, Your Honors. Donald Cook for Plaintiff Appellant Mr. Brandstetter. I'll start with a line from Stigalli v. United States, the 1980 Supreme Court decision. The right protected, the right of presumptively innocent people to be secure in their homes from unjustified forcible intrusions by the government is weighty. Now, of course, Stigalli held that even though the police had an arrest warrant, had their probable cause, because they knew they were going into a home of a third party, they had to get a search warrant. Can I ask a question that just kind of comes off the page here? The city, as I understand it, has said, just file a form, put your name and your address on it, we'll give you your guns back. Comply with Penal Code Section 33850, and assuming you satisfy all those standards under state law, that he's already complied with, by the way, when he acquired the firearms, you'll get your firearms back. I understand that, but it does say that when they're in law enforcement possession. Correct. I mean, this is such a minimal, you may have a Second Amendment claim, and if you want to pursue it, that's fine. But why not, and quite frankly, I'm not sure that even if you did comply, that you wouldn't still have a Second Amendment claim. But why doesn't he just fill out a form? He doesn't because, number one, by the way, this is not in the record, but the process is rather lengthy. Oh, okay. I mean, it's a several-month process. Oh, I see. It's not just submitting a form, turning it in. Okay, no, that's actually helpful for me to understand. It's less than this appeal. What? It's less than this appeal. That's true, it's faster, but the Ninth Circuit has gotten much better in hearing its cases. But, I mean, the problem for us is this is up on summary judgment. I mean, they can't just get rid of the injunction. I mean, even if you filled out the form today, that really wouldn't moot out the case because your claim is for four years or some period of time, there's been a Fourth Amendment, or, well, both a Fourth Amendment and a Second Amendment violation. Correct. The firearms should not have been seized, number one, and then, number two. Okay, can we talk about that because the seizure of the firearms, I'm struggling on that one I don't understand how that would have precluded seizure of the firearms. You had somebody making a threat that they were going to kill somebody else, and they were at that home, so why aren't the police officers entitled to take weapons that would be reasonably available to diminish that threat in a seizure? Weapons were not reasonably available. They arrested Kevin Gleason. They took him into custody. Hold on. I'm actually, I think you have some other arguments, but they arrested Kevin Gleason, but they were in the house. Okay, let's say they were in a safe. Maybe that would be different, but they weren't secure. I thought there was acknowledgment that they weren't secured. Well, depending on how you define secure, they certainly were not in a gun safe, right? They're in the attic. You access it through Mr. Brandsetter's bedroom, and I think it's telling that when the officer seized the firearms, she writes in her report. She doesn't say anything about access. That's something that defense came up with and the district judge refers to in his order. They seized it for safekeeping. Well, if there's merit to the claim that, well, perhaps he could use these firearms, may use them, perhaps he did use them, et cetera, they're taking him into custody. Go get a warrant. Considering what you now know about the firearms, which is. . . They did have a search warrant. They did have a search warrant, but when the officer realized that the firearm, realized when she actually took the firearms. . . She knew that they were his. . . Correct. Okay, so let's take a different hypothetical. What if the firearms were in the living room and Gleason was sleeping on the couch in the living room? Would they be justified in taking the firearms? No, because they took. . . That is no because, number one, the firearms belong to Mr. Brandsetter. Number two, they're taking Mr. Gleason into custody during the search. So your point is that they were removing the threat by taking Gleason out. Correct. No, go ahead. It's not just the threat, though, aren't they? Gleason has been threatening people with. . . I mean, it's not just the threat that he could use them. They're also investigating a crime, which is the threats that Gleason has been making. And these firearms that he may not own, but he had access to, could be evidence of that crime, couldn't they? Well, the standard, first of all, could be anything's possible. Well, I mean, I'm not saying anything. I'm saying don't they have probable cause to believe that? Like they're investigating this guy who's been threatening to shoot people and they find him, like, in a dwelling with accessible firearms? To be precise, it was the Dragon's Breath email, the threat of a shotgun, which is a threat of violence involving a firearm, no question about it. So what's the evidence that he was intending to, might use, had in his possession Mr. Bransetter's firearms? I mean, there wasn't any. I mean, it's true, Detective Turner, when she went to the house, she knew there were firearms there because she ran and . . . But I just, I mean, look, I don't think this is your strongest argument on the search. I think I'm more in . . . I mean, because at the end of the day, they got a search warrant. I'm not sure that the search warrant was going to come out any differently, even if more information was given. So your better argument seems to be, for Fourth Amendment purposes, that even if they had some ability to take these, at some point that Fourth Amendment, certainly within four years, the Fourth Amendment duty or justification dissipated. Well, sure. I mean, that's basically . . . And your argument probably would be the next day it dissipated. I'm not sure I agree with that because there was some . . . Can you talk about the investigation? I mean, did they end up charging Gleason with using any of these? No. No. Well, the charge they were investigating at the time they executed the search warrant was an extortionist threat. I think it was Penal Code Section 507, and he was ultimately charged with that and other threats, threats of threatening great bodily harm down the road. That's what he was ultimately charged with. As far as the Fourth Amendment issue goes, you start with the Miranda v. Cornelius decision and Brewster v. City of Los Angeles. Look, the police knew that the firearms . . . I mean, they admitted it literally within days of the search that we know the firearm belonged to your client, he's not a suspect, et cetera, et cetera. Wait, but did they know that they weren't relevant to any investigation? Yes, because they said you can have him back, just go through that state law process. And they told him that 10 days after this experience? Correct. Now you're circling back to my initial question. I know. So why doesn't he go through that process? Yeah. Right. Well, the point is . . . You'd rather sue as the great American way. Well, it's more than that. As a practical matter, the police treat firearms as per se contraband. I actually don't disagree with you, and so I'm not criticizing you for doing it, but I think you could have had it both ways. I think you could have gone through . . . Look, you don't need legal advice from me. Anyway, so here we are. Tell us about the Second Amendment. Because let me just frame up what my thinking on the Second Amendment is. Because if we were under pre-Bruin, I think you'd have a tougher time. Because they're saying, look, all you have to do is fill out this form. Now, admittedly, I need to dig in a little bit more to the form, but it seems like that might satisfy intermediate scrutiny. Now we are post-Bruin. We don't have any briefing, and I guess I'm asking you, do we need to ask for supplemental briefing on whether this provision that they're relying on is constitutional or satisfies Bruin? You've never challenged that, have you? Well, we have challenged as applied to Mr. Brandstetter. But what is it about the application? I saw that in your brief, but I didn't understand. Because you haven't, for example, you haven't said that . . . Is there a fee associated with this form? Do you have to pay a fee? Yes. It's not very much. I think it's $25. You submit it with the application. Okay. But the word fee appears nowhere in your brief. So you're not complaining that the fee is too high. No, no. That's not the brief. You mentioned delay this morning, but you haven't developed an argument that the delay is too onerous. That's not the brief. So what is it, when you say it's an as-applied challenge, what is it about the application to him in particular that's . . . He's not a first-time purchaser of these firearms. They were already acquired. He went through the process, the background investigations, complied with state law, lawfully had them in his possession. The police admit, and we'll just put aside for a moment whether the initial seizure was lawful, but the police admit literally from the day they seize it, well, yeah, we know this is not evidence of crime. It's not contraband. I would submit that under a Bruin analysis, well, wait a minute. They lawfully belong to him. He's gone through the background investigation. He has to go through another background investigation to get . . . It's to make sure that in order to get them back, that the person who's going to get the guns is entitled to have guns. You want to make sure it's him. And I don't quite understand what's wrong with that. If I may use an example, I'm kind of leery of doing it because maybe someone sees it differently. Suppose the state passed a law that said every six months, a owner of firearms has to resubmit an application establishing his entitlement to own the firearm. I don't think that law would stand Second Amendment scrutiny. Once the person, absent some evidence, you have reason to think he's no longer entitled to possess the firearm. And what we have here . . . Can I ask? Sure. You brought up Brewster, right? That was a case about cars, right, where they seize your car. Very familiar with it. I'm the attorney on Brewster. The case is still going on. So suppose that the policy was when we impound your car . . . They impound the car, and there I think they held it for 30 days, and we said you can't do that. So they impound the car, and they say, okay, come pick up the car whenever you want. But the policy at the impound lot is before you drive the car off the lot onto the roads, we want to see a current valid driver's license. That is the policy. Okay. Do you think that policy is constitutional? Well, no, because for the simple reason taking a car out on the street by an unlicensed driver is a crime, and it obviously presents a safety issue. But when you know that the person here, Mr. Brandstetter, is the owner of the firearm, you know he's already . . . you have no evidence he's no longer fit to own a firearm. You know he already went through the background investigation. How do we know that?  How do we know that? Because she ran Mr. Brandstetter through AFS, the Automated Firearm System. I know Judge Schroeder has a question. And they ran a criminal history background check on Mr. Brandstetter as well, and he had no criminal history, et cetera. So that's why they knew he was lawfully entitled to possess the firearms, even as of the moment that they seized the firearms. Judge Schroeder has a question. Well, he has to establish that he's the one who they're giving the guns to. And it just doesn't seem to . . .  In Brewster, there was a hearing, and she proved that she was the registered owner. And as I understand it, what they were doing was saying, no, no, we get to still keep the car for another 30 days because that's what we're authorized to do. We said, no, once she proves that she's the owner, you have to turn it. You can't continue to keep it. The city here admitted almost from the start that they knew that the firearms belonged to him. Again, they ran him through AFS and that the handguns are in AFS and knew that, according to AFS, he was the owner of the firearms. Detective Turner testified that, well, yeah, he told me the firearms belonged to him, and he's credible, and I believed him. And then in her report, she says . . . You want a record that we're giving them to him to fill out the form. Well, it's more than just a record. They're saying it's a state law that requires that you reestablish your entitlement to own these firearms. But isn't that what you've done? I mean, it seems like your as-applied challenge amounts . . . I mean, if we were to accept your as-applied challenge, the holding would be when you have a plaintiff who files a lawsuit and establishes in the lawsuit that he is the lawful owner of the firearms and is not a prohibited person and is entitled to possess them, in other words, that he would pass the background check, then he gets to have the guns without going through the background check, which, I mean, I guess we could say that, but why not just do the background check in the first place? Well, first of all, I'm just out of time. If I can answer your question . . . Well, don't worry. We'll give you time.  You mischaracterize . . . I mischaracterize and suggest you're doing something intentionally, and obviously you're not. The facts in this case . . . I'm trying not to. The facts in this case is not that . . . They know from the get-go the firearms belong to him, number one. They know that he has nothing in his record that they checked as part of getting a search warrant that suggests there's a reason to think he may no longer be entitled to possess firearms. They know he's already gone through the background check to acquire the firearms. They know all of that when the police . . . So it's not that because he filed a lawsuit they should give the firearms back. It's because they already know he satisfied all the requirements to lawfully own and possess these firearms, and they belong to him, and they also know the firearms are not contraband or evidence of crime or both. If they did think it were evidence of crime or contraband, then either they're going to say you can't have it back, they're going to get another warrant, et cetera. They already know all that. Given that state of knowledge by the defendants, you simply have to give the firearms back. It's like I would submit the Fruin decision out of the Third Circuit. I understand. We'll give you some rebuttal time, but let's hear from the government. Good morning, Your Honors, and may it please the Court. My name is Cecilia Rojas, and I represent Detective Turner, Chief Larry Gonzalez, and the City of Riverside in this appeal. The appellants respectfully request that this Court affirm the appellee's motion for summary judgment because, as this Court recognized, jurisdictionally plaintiff's claim is not ripe for adjudication for not following the procedures outlined in Penal Code 33-850. You're making a jurisdictional argument that it's just not right. The district court didn't rule on that, though. The reason that we make that argument is because, as mentioned earlier in the appellant's argument, the district court found that an appellant is making a per se or as-applied-to-him argument as to Penal Code 33-850 without having even done any of the process to obtain his firearms. So as-applied-to-him hasn't even made it. You haven't raised a jurisdictional argument in your briefing. I mean, look, if it's unripe, then we need to look at that no matter what. But, I mean, this is a bit of a curveball at argument to be saying that this is Article III concern, right? Sure, yes. And the reason for that argument is just to reinforce the district court's decision and the comments that were made here today. So can I ask you the practical question, too? You've kept his firearms for four years. You know he's the legal owner. There's no indication, apparently, that these were involved in any crime. Why are you doing this? Why not just give him the firearms back? Thank you for your question. So it's as simple as following the procedures of Penal Code 33-850. There is no other mechanism for the city or RPD to return an appellant his firearms outside of the requirements. So in your view, this all hinges on whether the search in the first instance was legal or not? Because you would agree that if the search, if they were not justified in taking it in the first instance, then we'd obviously have a problem. But once they took it consistent with the Fourth Amendment, if they did that legally in the first instance, they can keep it as long as they want, even if the Fourth Amendment justifications go away, even if the Second Amendment concerns are there until he files this form. Sure. Sure. So obviously that scenario, we argue, is different because we're arguing here that the initial seizure was lawful and it was a valid warrant. No, that was my hypothetical.  Yeah. So we would actually argue in those circumstances that the city and RPD is still bound by Penal Code 33-850 if the initial seizure were to be found unconstitutional. I mean, I don't think he's challenged the fee, but is it correct that he would have to pay a fee to fill out the form? That's one of the requirements, and I don't know if it's 25 for some reason. I'm remembering 250. I'm not too exactly sure what the fee is. How can any fee be justified? I mean, forget the Second Amendment. Like, it's his property. You took his property. You have no Fourth Amendment justification for holding his property. Like, don't you have to give it back? And how can you make him pay something to get it back? Sure. So the mechanism under Penal Code 33-850, it's actually for the Department of Justice to do the proper mechanisms. Okay, but why does he have to pay for that? Well, to answer your question in a different, slight way, we argue that if they're arguing towards the application of Penal Code 33-850, the city and RPD is not the correct party to challenge the Penal Code. It would be the Attorney General and then the Department of Justice, as they're the ones that are enforcing the Penal Code. We're just following the Penal Code. And can you, I mean, I guess this is outside the record, but do you, from your experience with this sort of thing, do you have any thoughts on how long this process takes? If you were to fill out the form, would it indeed be months? I'm not exactly sure how long it would take. I do agree it would take shorter time than this whole process of the appeal. I know in the district court it took a very long time for even the summary judgment motion to come. So it's not the same as the, I mean, it was my understanding that when an initial purchase of a firearm, the background check is fairly quick, right? But this is a different process than that? To be honest, I'm not exactly sure the time length of how long it would be to have his firearms returned. Nothing in this record about that, I guess. Exactly, yes. But requiring a background check, I mean, what's the justification for even requiring a background check? That's not the question here. The question, it seems to me, the only justification is we want to prove ownership as an administrative matter. Well, actually, the district court found that the purpose of Penal Code 33850, and I'm referencing the order, the district court's order in this case, Penal Code 33850 requires the DOJ to process the appropriate eligibility checks to return appellant his firearms. And these proper background checks, eligibility checks, these are deeply rooted in history and tradition, as Bruin were to say. And that's why we also argue that Bruin is not applicable in this case. Let's be clear. I don't think that Bruin, I mean, look, I'm getting ahead of myself because we haven't seen the briefing on it, but I think that's a pretty broad overstatement to say there's a history and tradition of requiring lawfully owned guns to go through another background check. I mean, I'm not aware of anything like that. Well, the purpose of Bruin… I mean, the problem is your arguments sort of play into his argument, which is California and the cities in California don't take the Second Amendment seriously. And that is the problem with this case. Just give him the guns back. I mean, what are you saying? The attorney general is going to come to you and say you violate and give you a violation citation? Well, yeah, our argument is that we have no other mechanism to return him his firearms. That's not true. Here's a mechanism. Get the guns out, take them to his house, and give them to him. That's a mechanism. What's going to happen? The appellees would be violating the penal code. And what's going to happen? The attorney general is going to come and throw you in jail? They're going to fine you? It is not up to the appellees to not follow the law. Look, we've got two parties here who are both taking very frustrating positions. Because I just can't give any credibility to your argument that you can't do anything. I think you're being very difficult in how you're approaching this case. Well, as I understand it, I agree that this is frustrating. But as I understand it, the appellant's position has been that these were unlawfully seized and that you are required to give them back to me because they were unlawfully seized. And then he filed a suit in order to, and you said no, you haven't shown us any of that, and you have to fill out the form. And then we have a suit to establish not only that you're not complying with the, to show that these were unlawfully seized. Isn't that basically what this is about? I'm sorry, I don't think that. I mean, he's challenging the search and saying you are holding these pursuant to an unlawful search. Isn't that right? That is part of his argument. Part of his argument is that the initial search was unlawful. Well, the seizure. Part of his argument is also the continued possession, right? I mean, that's where I'm more intrigued, is the continued possession. Yes, and I agree that that's the crux of the case, the continued, alleged refusal to return appellant's firearms. But as to the second amendment. What if the fee were $10,000? I mean, you would say, well, you haven't paid the $10,000, so we're not going to give it back. Not our problem, sorry. State law says you have to pay $10,000. Yes, so in that instance, it's our position that we have to follow the penal code, and it's not just our PD, it's everybody. I guess you would say he should have named the state as a defendant and brought a challenge to the statute, right? Yes, there is a joinder issue. We are objectively the improper party. As to if he's making a constitutional challenge to the penal code, he's stating that he is not. But by citing Bruin, he's taking a backdoor approach. But maybe the only way he can actually get relief. Well, even in Bruin, Bruin suggests that background checks ensure that only those bearing arms in the jurisdiction are law-abiding citizens. I know this isn't particularly legally relevant, but did you call the Attorney General's office and say, what do we do here? Me personally, I did not. Did anybody from the city? We're not asking you to divulge. That's true. I'm just intrigued. I mean, yeah, that's true. Maybe they're just trying to stand on it too. You're right, you don't have to divulge that. But this case seems like the problem is now it's dragged on, and it's hard to extricate out of. Yes, I completely agree. So let's hypothetically say that we did affirm. He could theoretically bring a new case against the Attorney General saying, I don't want to comply with this penal code. Yes, assuming that there are no other jurisdictional or statute of limitations, assuming, right? Yes, the proper party is not the city or Detective Turner or the Chief Larry Gonzalez in this matter. It would be the Attorney General. If he's making a Bruin challenge, and according to his papers, he is making a Bruin challenge, which is our position. It's a backdoor constitutional challenge. And as to background checks, Bruin said it. So what about the Fourth Amendment? I guess your position is the same on the Fourth Amendment as it is on the Second Amendment, that you're still – I mean, Brewster seems to poke a little bit of a hole in that by saying you can't just impose a requirement after the Fourth Amendment right, that the Fourth Amendment justification has dissipated. That seems to be what the statute is doing. Yes, I agree that if – then there has to be a valid initial seizure and then a substantial justification to withhold. But a huge difference in Brewster and our instant case is that in Brewster, the plaintiff did follow the appropriate procedure. And still was denied it. Yes, and LA – But I thought it said that even if you show your identification, you still can't get it back until 30 days. So it wasn't – I mean, he did show the ID, but there was still this – I mean, I guess I'm not sure that it's as inapplicable as you're saying because what we said is, yeah, but you can't put that 30-day limitation on it. Correct. But that's effectively what this statute is, is an extension. I mean, I guess we need to delve into exactly how long it takes. But it doesn't seem to be as simple as showing your driver's license or signing a paper saying, I own this. It does seem to be more involved. And that seems to put it more into the 30-day prohibition that we said you couldn't do in Brewster. You can't extend a Fourth Amendment justification through state law. Yes, and the way I would respond to that is that in Brewster, the appropriate measures were taken, right? I think there was maybe a fee to show identification. And there was still a minimum withholding of the vehicle for 30 days. Here, we're asking him to at least start the process, and we'll try to – To get to the same result, that you're still tacking on some period of time, whether it's a week or 30 days or six months, as he claimed, which we've said you can't do in Brewster, at least under the Fourth Amendment. Under the – yes. But at least the process would have been started. And there is an end time of we can – people can talk to each other and try to speed it up. But, I mean, here's the problem. Even if he gets them back, even if he files the form now, I don't think that moots out this case because you've still got the justification. Now, I guess we've got a question we've got to consider, which is whether we have the proper procedural vehicle to address some of these issues. I agree. Because – I agree. Like you mentioned earlier in my colleague's arguments, that you still have to file and do the process. You didn't have to wait it out. And you could have your firearms now. Should we remand for leave to amend the complaint and sue the proper party? And to follow up on that, why does he have to name the AG? I mean, you're the entity that has the firearms, right? And he wants an injunction that would say, you know, you, the defendant, who has the custody of the firearms, must give the firearms to him. Like, that seems like you're the proper party then, isn't it? Yeah. The reason for that and the why, you know, it comes up is that we can't just give him his firearms back. Well, you could if there was an injunction telling you to, right? Sure. Sure. Okay. So then – If there's a court order telling us to do something – But then doesn't that make you the proper defendant in an action seeking an injunction? I would argue, sure. In the action seeking an injunction – Which he's doing, right? Part of it. And that's under the abuse of discretion apportion. But if the motion for summary judgment is granted as to the appellees, then the injunction at that point would be moot. I mean, the problem maybe is not that he's not – it's not that he hasn't sued the AG. It's that he hasn't presented a constitutional challenge to the statute, which is the thing that is compelling the action he's complaining about, right? Yes. Right. And he's been complaining all along that the reason that you were holding – continue to hold these unlawfully is because not only – is not because you don't like the statute, but – he doesn't like the statute, but because the search was unlawful in the first place. And you are, as to him, so that the guns were unlawfully seized. And your position has been the guns were not unlawfully seized, and therefore you have to comply with the statute. Yes. Our position completely is there was a valid search warrant. It was not overbroad. No omissions representations. And also to – just real quickly on that note. In order to prevail on a Fourth Amendment violation due to an overbroad search warrant, he has to prove that Detective Turner acted with intentionality and reckless disregard, not mentioned. Yes. And also, in his opening brief, appellant makes no mention as to Penal Code 33850, knowing that it's the city's sole basis for the alleged refusal to return his firearms. If I may, I have one more question on an issue we haven't talked about so far, and that's the Rule 11 sanctions motion. What is your understanding of what happened with that motion in the district court? My understanding is that there was competitive Rule 11 motions, and the court decided to, yeah, not – they were competitive and decided to not rule on either. Well, because when I look at the order, granted summary judgment, it addresses your motion but doesn't seem, unless I missed it, just doesn't say anything about his. So do you think that that – is that still pending? I would argue that it's not still pending, and I completely agree. It's a little confusing. And I would actually even argue that the order doesn't even mention appellant's – I mean, yeah, appellant's motion for summary judgment because there was also competing motions for summary judgment. And the way I read the order is granting it as to the city's motion for summary judgment. So do you think – I mean, this is a question of our appellate jurisdiction here, like if the court didn't rule on it. So do you understand the order to be implicitly rejecting his sanctions motion? Yes. Okay. Yes. All right. Thank you. And thank you for those reasons we asked to affirm. I guess – do you still have time or do we need to give him time? No, he had time. Okay, go ahead. No. Or did he – he was out of time. We'll give you two minutes for rebuttal.  This claim about Brewster, absolutely incorrect. They're making the same wrong argument. Hold on before we get – and I get it. I mean, we're all trying to attack this case. I want you to tell us what – I mean, have you challenged the constitutionality of this state statute? No. Only as applied to him. This is exactly the same situation I had my client in Brewster. In Brewster and in my follow-up case of Sandoval, my plaintiffs did not comply with Penal Code Section 14602.6, which required that they show proof that the unlicensed driver was licensed. Then they would get their car back. They did not comply with that. They said, violates our rights, our Fourth Amendment rights. You can't rely on state law. So Brewster helps you on the Fourth Amendment. Yes. Why do you think it also helps you on the Second Amendment? Because I would submit that a firearm deserves as much constitutional protection as a vehicle. And perhaps maybe a bit more because there is that amendment right before the third. There's no constitutional right to drive a vehicle. It's a privilege, not a right, as they say. So – and when you apply a Bruin analysis to the facts of what we have here, it doesn't fit. Part of the problem is we don't have anything before us. And that's why I came back to if we were going to go down this road. I don't know if we're going to. Wouldn't we have to – or shouldn't we seek supplemental briefing on that? This decision, I think it was last year. The third, sir. No. Baird versus Bonta. Cited in the papers. It's the injunctive relief case concerning a Second Amendment challenge. And the panel held that, look, it's not up to the district court to help out the government to justify a firearm regulation. The government has to come forward and justify it. And they don't come forward and justify it. It's basically the legal equivalent of you snooze, you lose.  So they haven't done that. And the district court itself did not apply a Bruin analysis, even though Bruin had already been decided when the court issued its decision. Can I ask you the same question I asked your friend at the very end? How do you read the district court's order? The court was completely silent, said nothing about plaintiff's request for Rule 11 sanction. It specifically addressed the defense motion, said the defendants did not carry their burden of proof. It's right at the end of the court order. It said nothing. Do you think it implicitly rejected it, or do you think it's still pending? No, I think the court never ruled on it one way or the other. Then how do we have jurisdiction over that? Well, I think what the court should do is remand the district court, instructing it to exercise its power, its discretion, and rule upon plaintiff's request for Rule 11 sanctions. That's what I think this court should do. In the first instance, the district court's got to make a ruling. The district court never made a ruling on that Rule 11 sanctions request. Make a ruling. Address it. That's what I think this court should do with regard to that. I'm way over time. You're fine. We took you over. Any more questions? Thank you to both counsel for your arguments. The over-breath and search warrant, it's a good issue. I know it hasn't really gotten your attention like a Second Amendment, but it's a good issue. You may feel differently. You've had plenty of time to make your case, and we're appreciative of it. The case is now submitted, and we'll move on to the final.
judges: SCHROEDER, NELSON, MILLER